FRANK J. DOOLEY *v.* TOWN PLAN AND ZONING COMMISSION OF THE TOWN OF FAIRFIELD (78978)

THOMAS J. CARROLL ET AL. *v.* TOWN PLAN AND ZONING COMMISSION OF THE TOWN OF FAIRFIELD (79000)

FRANK J. DOOLEY *v.* TOWN PLAN AND ZONING COMMISSION OF THE TOWN OF FAIRFIELD (79219)

THOMAS J. CARROLL ET AL. *v.* TOWN PLAN AND ZONING COMMISSION OF THE TOWN OF FAIRFIELD (79251)

KING, C. J., MURPHY, SHEA, ALCORN and COMLEY, Js.

Argued October 2, 1963—decided January 21, 1964

*Hereward Wake,* for the appellant (plaintiff in the first and third cases).

*Philip Y. Reinhart,* for the appellants (plaintiffs in the second and fourth cases).

*John J. Darcy,* for the appellee (defendant in each case).

SHEA, J. In February, 1961, the defendant, after notice and hearing, amended the zoning regulations of Fairfield by creating a new zone called flood plain district.[1] Thereafter, the defendant changed the zonal classification of an area of about 404 acres from residence B to flood plain district. In the first case, the plaintiff, Frank J. Dooley, both owns and is under a contract of May, 1960, to purchase from Catherine A. Nemesky land which is within the area covered by this change of zone. In the second case, the plaintiffs, Thomas J. Carroll, Patrick L. Carroll, Jr., and Frank W. Carroll, are the owners of land included in the same area. Separate appeals from the action of the defendant in changing the zone were taken to the Court of Common Pleas. Subsequently, in May, 1961, the defendant amended the zoning regulations to forbid the excavation, filling and removal of soil, earth or gravel within the flood plain district except under a special exception. Fair-

[1] "[Fairfield Zoning Regs. (1960, as amended)]. Sec. 22.2 PERMITTED USES: In Flood Plain District the following uses only shall be permitted:

"1. Parks, playgrounds, marinas, boat houses, landings and docks, clubhouses and necessary uses.

"2. Wildlife sanctuaries operated by governmental units or non-profit organizations.

"3. Farming, truck and nursery gardening.

"4. Motor vehicle parking as an accessory to a permitted use in this district or an adjacent district."

field Zoning Regs. § 22.3. Separate appeals from the adoption of this amendment were also taken to the Court of Common Pleas and constitute the third and fourth cases. By agreement, all of these appeals to the Court of Common Pleas were tried together. The court rendered judgments dismissing all of the appeals, and from the judgments the plaintiffs have appealed to us. On stipulation of the parties, the appeals to us have been combined.

All of the land included in the change of zone is in the Pine Creek area of Fairfield. Of the 404 acres in the new flood plain district, the town owns 206 acres, the United States government owns 28 acres, and private parties own the remaining 170 acres. South Pine Creek, a tidal stream with an opening about 100 feet wide on Long Island Sound, runs irregularly inland through a part of the area, and water from the creek has overflowed the surrounding land during abnormally high tides.[2]

In September, 1960, the Fairfield flood and erosion control board, which had been created under authority of what is now § 25-84 of the General Statutes, declared the 404 acres a flood plain area. A record of the action of that board, including a map and legal description of the property, was sent to the defendant together with a proposal that the zone of the property be changed to a flood plain district. Thereafter, the defendant took the action of which the plaintiffs now complain.

Prior to the change of zone, the defendant, acting as a planning commission, had denied not less than

[2] About 91 percent of the total acreage in the new district is at or below the elevation considered as tidal marshland. Less than half of the remaining 9 percent of the higher land is privately owned, and almost all of this 9 percent lies below the flood level reached by the hurricanes of 1938, 1944 and 1954.

two applications for approval of a subdivision of the Dooley property. The defendant, as a zoning commission, itself had proposed, in 1960, to upgrade the area which is now in the new flood plain district to R-3 residence. This proposal was opposed by the flood and erosion control board and the health department. From the reasons given by the defendant for changing the zone of the plaintiffs' property, it is evident that the report of the flood and erosion control board had a strong influence in the decision.

The plaintiffs claim that the application of the regulations to their property constitutes the taking of property without compensation and without due process of law in violation of the fifth and fourteenth amendments to the constitution of the United States and in violation of § 11 of article first of the Connecticut constitution.

The guiding principles were enunciated in *State* v. *Hillman,* 110 Conn. 92, 105, 147 A. 294: "All property is held subject to the right of government to regulate its use in the exercise of the police power, so that it shall not be injurious to the rights of the community, or so that it may promote its health, morals, safety and welfare. The power of regulation by government is not unlimited; it cannot . . . be imposed unless it bears a rational relation to the subjects which fall fairly within the police power and unless the means used are not within constitutional inhibitions. The means used will fall within these inhibitions whenever they are destructive, confiscatory, or so unreasonable as to be arbitrary." Justice Holmes, in *Pennsylvania Coal Co.* v. *Mahon,* 260 U.S. 393, 413, 43 S. Ct. 158, 67 L. Ed. 322, elaborates on confiscation when he says of the police power: "When it reaches a certain magnitude, in most if not all cases there must be an exercise of

eminent domain and compensation to sustain the act. So the question depends upon the particular facts."

The important question to be decided then is whether the situation is one which allows regulation through the process of zoning under the exercise of the police power or whether the regulations adopted are so unreasonable and confiscatory as to constitute for all practical purposes a taking of private property for public use. *Corthouts* v. *Newington,* 140 Conn. 284, 288, 99 A.2d 112. Relevant to this determination is the extent to which property values are diminished by the zoning change and its relationship to the health, safety and welfare of the community. *Vartelas* v. *Water Resources Commission,* 146 Conn. 650, 654, 153 A.2d 822; *Del Buono* v. *Board of Zoning Appeals,* 143 Conn. 673, 677, 124 A.2d 915.

An analysis of the uses permitted under § 22.2 of the zoning regulations in a flood plain district clearly demonstrates that the use of the plaintiffs' land has been, for all practical purposes, rendered impossible. First, to restrict the use of privately owned property to parks and playgrounds bars the development of the land for residential or business purposes and raises serious questions as to the constitutionality of the restriction. See Dunham, "Flood Control via The Police Power," 107 U. Pa. L. Rev., 1098, 1108. The practical effect of this limitation on use is to restrict potential buyers of the property to town or governmental uses, thus depreciating the value of the property. Second, the property of the plaintiffs is about half a mile from Long Island Sound, and consequently, the property could not be used for a marina, a boathouse or a landing and dock. Third, the Fairfield zoning regulations contain no definition of a clubhouse. Generally, a clubhouse is defined as a house occupied by a club or com-

monly used for club activities. Webster, Third New International Dictionary. The definition includes fraternity houses, sorority houses and houses of secret societies and social clubs generally. See *Dunkirk Aerie* v. *Dunkirk,* 274 App. Div. 685, 87 N.Y.S.2d 202. Although the term "clubhouse" may be construed broadly, the presence of one on the plaintiffs' land, considering the acreage involved, would have little effect in preventing substantial diminution in the value of the land. Fourth, paragraph 2 of § 22.2 of the regulations permits the use of the property for wildlife sanctuaries operated by governmental units or nonprofit organizations. Obviously, such a use does not provide the landowner with any reasonable or practical means of obtaining income or a return from his property. Again, this use contemplates a diminution in land value and subsequent acquisition by some governmental agency, either by purchase or by condemnation. Fifth, the regulations also permit farming, truck and nursery gardening. At the public hearing, a real estate expert testified that farming has long since been ruled out in this area. Finally, the regulations also permit motor vehicle parking as an accessory to a permitted use in the flood plain district or an adjacent district. But under § 22.3 of the regulations, the land cannot be filled or paved except by special exception granted by the defendant under stringent conditions, and then only for a limited time.

From this analysis of the regulations, it cannot be questioned that the testimony of the plaintiffs' real estate expert is based on sound observation. He stated that these regulations had a very substantial effect on the value of the property, causing a depreciation in value of at least 75 percent.

The plaintiff Dooley is under contract to purchase the Nemesky property for $80,000. Much of that property is on good high ground and was not under water in the 1938 hurricane. The land could be used for houses which would be readily salable in the price range of $15,000 to $17,000 per unit. Some borrowing and filling might be necessary to develop the property for building purposes; such work could be done under the original zonal classification, which permitted the building of one- and two-family residences.

So far as the Carroll land is concerned, a real estate expert stated that it could be used as residential property. Some time before the defendant changed the zone of the Carroll property to flood plain district, the town levied a sewer assessment of over $11,000 against the property. Since the present regulations prohibit any building whatever on the land other than those included within the permitted uses, the sewer system can be utilized for no practical purpose so long as the property is privately owned. *Arverne Bay Construction Co.* v. *Thatcher,* 278 N.Y. 222, 232, 15 N.E.2d 587.

There can be no doubt that, from the standpoint of private ownership, the change of zone to flood plain district froze the area into a practically unusable state. The uses which are presently permitted in the new zone place such limitations on the area that the enforcement of the regulation amounts, in effect, to a practical confiscation of the land. *Suffield Heights Corporation* v. *Town Planning Commission,* 144 Conn. 425, 429, 133 A.2d 612; *Del Buono* v. *Board of Zoning Appeals,* supra, 678; *Libby* v. *Board of Zoning Appeals,* 143 Conn. 46, 51, 118 A.2d 894. Further, although the objective of the Fairfield flood and erosion control board is a laud-

able one and although we have no reason to doubt the high purpose of their action, these factors cannot overcome constitutional principles. The plaintiffs have been deprived by the change of zone of any worthwhile rights or benefits in their land. Where most of the value of a person's property has to be sacrificed so that community welfare may be served, and where the owner does not directly benefit from the evil avoided (see, e.g., the old smoke nuisance cases such as *State* v. *Hillman,* 110 Conn. 92, 147 A. 294), the occasion is appropriate for the exercise of eminent domain. Our statutes empower the flood and erosion control board to purchase or condemn property if it is needed for flood control. General Statutes § 25-86.

The result which we reach is supported by reason and authority. In *La Salle National Bank* v. *County of Cook,* 12 Ill. 2d 40, 145 N.E.2d 65, a small plot of land was rezoned from commercial to residential with a resulting two-thirds decrease in the value of the land. The court ruled that this reclassification worked too excessive a change in the value of the property. In *Vernon Park Realty, Inc.* v. *Mount Vernon,* 307 N.Y. 493, 121 N.E.2d 517, a flat piece of land on which the owner intended to build a shopping center was rezoned so that it could be used only as a parking lot. The court, convinced that the zoning change destroyed the greater part of the value of the property, ruled that the change was unreasonable. Similarly, in *Tews* v. *Woolhiser,* 352 Ill. 212, 185 N.E. 827, commercial land on which the owner wanted to build a gasoline station was zoned for residential purposes, but the location of the land made it practically worthless for residences. The court overruled the zoning change because it felt the diminution in value was excessive. In

*Denver* v. *Denver Buick, Inc.,* 141 Colo. 121, 347 P.2d 919, a zoning ordinance requiring installation of off-street parking facilities as a condition for using the land for business purposes was voided as excessively limiting the use the owner could make of the land. Finally, in *Morris County Land Improvement Co.* v. *Parsippany-Troy Hills Township,* 40 N.J. 539, 193 A.2d 232, the New Jersey Supreme Court, faced with flood-basin zoning very similar to the case at hand, voided the regulation as an unconstitutional taking.

The defendant insists that the constitutional issue should not be determined unless and until the plaintiffs have exhausted their administrative remedies by applying to the zoning board of appeals for a variance in the use of their respective properties. In support of this proposition, the defendant relies on the case of *Florentine* v. *Darien,* 142 Conn. 415, 115 A.2d 328, where we, in dealing with a single lot included in a zone which had been reclassified, held (p. 431) that the plaintiffs were not entitled to injunctive relief against the enforcement of the zoning change until they had been denied a variance by the zoning board of appeals. The facts here differ from those in the *Florentine* case in that the plaintiffs' land is measured in terms of acreage and constitutes a substantial part of the privately owned property in the new flood plain district. A variance should not be granted unless it is in harmony with the general purpose and intent of the zoning regulations. It should not be used to accomplish what is, in effect, a substantial change in the uses permitted in a specified zone. The power to accomplish such a result is in the zoning commission. *Heady* v. *Zoning Board of Appeals,* 139 Conn. 463, 468, 94 A.2d 789. Under the circumstances in the

present case, it is not only unlikely but highly improbable that the zoning board of appeals would or legally could, by acting on an application for a variance, grant to the plaintiffs the relief which they seek. *Finch* v. *Montanari,* 143 Conn. 542, 544, 124 A.2d 214; *Stavola* v. *Bulkeley,* 134 Conn. 186, 190, 56 A.2d 645. To grant a variance which would afford the plaintiffs any appreciable relief would seriously undermine the legislative purpose of the defendant in creating a flood plain district. An application for a variance would be doomed to almost certain failure. Such a useless course is unnecessary. *Corsino* v. *Grover,* 148 Conn. 299, 308, 170 A.2d 267.

The other claims of error require no discussion.

We hold that the action of the defendant in changing the zone, so far as it affects the properties of the plaintiffs as described in their complaints, is unreasonable and confiscatory and therefore, as to these properties, is in violation of the fourteenth amendment to the United States constitution and § 11 of article first of the constitution of Connecticut. In consequence, the regulations pertaining to the flood plain district can have no application to the plaintiffs' properties. All four appeals should be sustained.

There is error, the judgments are set aside and the cases are remanded with direction to sustain the appeals.

In this opinion KING, C. J., ALCORN and COMLEY, Js., concurred; MURPHY, J., concurred in the result.