GEORGE C. BARTLETT *v.* ZONING COMMISSION OF THE TOWN OF OLD LYME

ALCORN, C. J., HOUSE, THIM, RYAN and SHAPIRO, Js.

Argued March 4—decided March 24, 1971

*Donald O'Brien,* for the appellant (defendant).

*Fred B. Rosnick,* for the appellee (plaintiff).

ALCORN, C. J. The plaintiff has taken what both parties treat as an appeal from the action of the defendant zoning commission in adopting a change of zone affecting the plaintiff's land. The trial court sustained the appeal and the defendant has appealed from that judgment. We will treat the case as the parties have done. *DeForest & Hotchkiss Co.* v. *Planning & Zoning Commission,* 152 Conn. 262, 271, 205 A.2d 774.

The plaintiff owns approximately four acres of land in the town of Old Lyme which he acquired for a nominal amount of cash in 1961. Part of the land is zoned for residential purposes and part for com-

mercial purposes. In spite of the fact that the land was thus zoned, it was, nevertheless, subject to § 3.16.4 of the Old Lyme zoning regulations printed in the footnote.[1] The plaintiff had acquired the property for investment purposes and, in 1964, he had applied to the zoning commission pursuant to § 3.16.4 for permission to fill the land and that permission was denied.

On July 9 and 19, 1968, the defendant caused to be published a notice of a public hearing to be held by it on July 22, 1968, to consider amending the zoning regulations by repealing § 3.16.4 and adopting new sections to be known as §§ 1.22.1, 1.22.2, 3.17 and 3.18, the substance of which will be subsequently stated. Several hearings were held on the proposal. The defendant's records of the hearings are very unsatisfactory due to the numerous blanks and omissions and the failure to identify the persons speaking in many instances.

The plaintiff appeared at the hearings in opposition to the adoption of the proposed §§ 3.17 and 3.18, and it is possible to glean from the record of the hearings that at least one basis for his objection was that the adoption of the proposed sections would amount to a confiscation of his land without just compensation.

Following the hearings, the defendant, on September 28, 1968, repealed § 3.16.4 of the zoning regula-

---

[1] "[Old Lyme Zoning Regulations § 3.16.4] No land in any district which is less than one foot above mean high water shall be used for construction, nor shall it be filled or paved, nor shall any natural grades be changed, nor any water course altered or obstructed, except with the approval of the Zoning Commission, which Commission shall have found after a public hearing on the subject, that any proposed operation will not cause any hazard from flooding, will not adversely affect drainage or ground waterlevel, and will not be detrimental to property values or the public health, safety, and welfare."

tions and amended the regulations by adopting §§ 1.22.1, 1.22.2, 3.17 and 3.18, which are set forth in the footnote.[2]

It does not appear whether any of the plaintiff's land is within the Waterfront Business District to which the limitations in § 3.18 do not, by the terms of the section, apply. Nor are we apprised of whether the Waterfront Business District differs from the Waterford Business District referred to in § 3.17 or whether one or the other is a misnomer. In any event, the plaintiff did not apply to the building inspector for the permit provided for under

---

[2] "1.22.1 Tidal Wetlands: Tidal Wetlands are those lands which (1) border on or lie beneath tidal waters, and (2) are less than 3.5 elevation. U. S. Geodetic Servey [sic] Datum.

"1.22.2 Tidal Marshlands: Tidal Marshlands are tidal wetlands which are not beach areas or rocky shore areas, and are switch grass, black grass, saltmeadow grass, saltmarsh grass, salt grass, and common reed grass."

"3.17 Restrictions On The Use Of Tidal Wetlands: No construction, reconstruction or alterations of any building or structure and no filling in, dumping, discharge of sewerage, or other wastes, piping, excavation, or change of grade is permitted in any tidal wetland excepting wooden walkways, warfs [sic] and duck blinds, public boat landings, and ditches opened or kept open by the State or Town.

"Applications for special exceptions from said restrictions may be submitted to the Zoning Board of Appeals, and the Zoning Board of Appeals is hereby authorized, after public hearing held upon any such application, to grant a special permit for any of the following:

"(a) the digging or dredging of a channel by a landowner to allow his boat to be brought from his land to the water, said channel to be only wide enough and deep enough to accommodate the boat of the applicant;

"(b) the placing of a boathouse on pilings — the boathouse to be only large enough to accommodate the boat of the land owner;

"(c) the erection of piers, docks, piles for life lines, rafts, or jetties, and the filling in with sand and the digging of channels at beaches or rocky shore areas.

"Provided, however, no such special permit shall be granted in any of the above cases unless the Zoning Board of Appeals shall find, after hearing, that the work to be done will be within the area over which the applicant has sufficient riparian or littoral rights and that

§ 3.18 or to the zoning board of appeals for a special exception under § 3.17. The plaintiff did, however, appeal to the Court of Common Pleas from the defendant's action in amending the zoning regulations by adopting §§ 3.17 and 3.18. He did not appeal from the repeal of § 3.16.4.

The commission stated its reasons for adopting §§ 3.17 and 3.18 as follows: "The Old Lyme Zoning Commission, after thorough study and deliberation, finds that action is urgently needed if the marshlands and wetlands bordering tidal waterways of Old Lyme are to be preserved for the use and pleasure of this and future generations. The marshlands are constantly threatened with destruction by dredging or filling; the wetlands are threatened with polution [sic] and unsightly and unhealthful private and commercial development. Yet these are vital economic resources—which contribute greatly to Old Lyme's natural charm and beauty; which attract

---

it will not adversely affect the property or rights of any land owner with property located within 1,000 feet. Any special permit so granted under (a) or (b) above shall provide that no soil dug or dredged or removed shall be placed upon tidal marshlands nor shall it be dumped into the channel or waters surrounding tidal marshlands.

"The limitations provided by this section do not apply within the Waterford Business Districts nor to maintenance to existing facilities or the maintenance of the facilities granted in accordance with this section.

"3.18 Restrictions On The Use Of Land Adjoining Tidal Marshlands: No grading, construction or alteration is permitted within a land buffer zone twenty-five (25) feet wide adjoining tidal marshlands until there is first submitted to the Building Inspector a plan of construction, or a plan of grading showing the details of the proposed construction, excavation, or grading. No permit for such operations shall be granted unless the plan shall clearly show that the results of the proposed construction, excavation or grading will not cause any filling in of the tidal marshlands.

"The limitations provided by this paragraph do not apply within the Waterfront Business Districts."

visitors seeking opportunities for healthful recreation; which shelter wildlife; which give estbetic [sic] pleasure to Old [sic] residents and visitors; and which, because of their esthetic qualities, help maintain residential property values and make Old Lyme a more desirable place in which to live. The Old Lyme Zoning Commission agrees, therefore, that the tidal marshlands and wetlands must neither be destroyed nor despoiled; and in order to preserve and protect them, the Commission hereby adopts the foregoing amendment to the zoning regulations."

The plaintiff reiterated, in the trial court, the claim made before the commission that the adoption of §§ 3.17 and 3.18 deprived him, for all practical purposes, of the use of his land. After determining that the plaintiff was an aggrieved party who had made a proper and timely appeal, the court found and concluded that, after deducting the cost of filling necessary to make the land usable for commercial purposes, the commercially zoned portion of the property would have a value of $32,000, but that if buildings cannot be constructed on the land the present fair market value is about $1,000. The court further concluded that the restrictions imposed by §§ 3.17 and 3.18 would deprive the plaintiff, for all practical purposes, of the use of his land and that even if he were granted a special exception, as provided in § 3.17, he would still be deprived of any practical use of his land. Consequently, the court held that the restrictions were so unreasonable and confiscatory as to amount to a taking of the land for a public use, and, since there was no provision for compensation, the adoption of §§ 3.17 and 3.18, so far as they affected the property of the plaintiff, violated both the United States constitution and § 11 of article first of the Connecticut constitution.

The plaintiff's property is tidal marshland as defined in §§ 1.22.1 and 1.22.2. As such, the plaintiff could make no use of it under §§ 3.17 and 3.18, absent the grant of a special exception, other than wooden walkways, wharves, duck blinds, public boat landings and public ditches. Even if a special exception were granted under § 3.17, he could not use the land except to dig a channel and erect a boathouse on piles sufficient to accommodate his own boat if he had one, and to erect piers, docks, piles for life lines, rafts or jetties. There is no showing that the land qualified as a beach or rocky shore so as to permit an exception for filling with sand. Furthermore, no special exception could be granted under § 3.17 for the limited purposes described unless the zoning board of appeals found that the work was in an area over which the plaintiff had "sufficient riparian or littoral rights" and that the work would not adversely affect the "property or rights of any land owner with property located within 1,000 feet."

Undeniably, the defendant's objective to preserve marshlands from encroachment or destruction is a laudable one. The preservation of our natural environment is of critical concern. Indeed, the General Assembly, in 1969 Public Acts No. 695, which became effective October 1, 1969, and which is now General Statutes §§ 22-7h—22-7o, has recognized this fact, but has provided for the determination of reasonable compensation for land taken. § 22-7n (a). The purpose to be served is not the issue on this appeal, however. The issue is whether that purpose can be accomplished in the manner attempted here.

Zoning regulations are a legitimate subject for the exercise of the police power provided they are not such an unreasonable exercise of that power as to become arbitrary, destructive or confiscatory and so

unconstitutional. *State* v. *Hillman,* 110 Conn. 92, 100, 147 A. 294. Whether the amendments adopted in this case meet the test of a constitutional exercise of the police power must be determined in the light of the circumstances shown to exist. *Corthouts* v. *Newington,* 140 Conn. 284, 288, 99 A.2d 112. The ultimate question is whether the amendments which the defendant adopted are so unreasonable and confiscatory as to amount, for all practical purposes, to a taking of the plaintiff's property for a public use without just compensation. *Dooley* v. *Town Plan & Zoning Commission,* 151 Conn. 304, 309, 197 A.2d 770. If they are, then they violate both the fifth and fourteenth amendments to the constitution of the United States and § 11 of article first of the constitution of Connecticut. The trial court concluded that, as to the plaintiff's property, the action complained of was unreasonable, confiscatory and unconstitutional and we agree with that conclusion.

It is unnecessary to repeat the extreme restrictions which the defendant has placed on the plaintiff's use of his property. Other than public boat landings and ditches, neither of which would appear to be a private activity, the plaintiff's use of his property is practically nonexistent unless he happens to own a boat and even that use purports to be conditioned on the exercise of the very broad powers vested in the zoning board of appeals.

There is no error.

In this opinion the other judges concurred.