Harry RAVALESE

v.

**TOWN OF EAST HARTFORD, et al.**

**Civ. No. H–84–761 (PCD).**

United States District Court,
D. Connecticut.

May 13, 1985.

Howard M. Wood, III, Wood & Wood, Glastonbury, Conn., for plaintiff.

David A. Zipfel, Asst. Corp. Counsel, Town of East Hartford, East Hartford, Conn., for defendant.

## RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

DORSEY, District Judge.

Plaintiff, Harry Ravalese, seeks damages under 42 U.S.C. § 1983 against the Town of East Hartford (Town), the Town's

---

Planning and Zoning Commission (PZC), and four Town officials, based on the enactment of zoning regulations that have the effect of placing a substantial portion of plaintiff's property in a flood plain zone.[1] Defendants have moved to dismiss for failure to state a claim. Rule 12, Fed.R.Civ.P. Since matters outside the pleadings were presented by defendants, the motion must be treated as a motion for summary judgment. *Samara v. United States*, 129 F.2d 594 (2d Cir.1942), *cert. denied*, 317 U.S. 686, 63 S.Ct. 258, 87 L.Ed. 549 (1942); *Modern Woodcrafts, Inc. v. Hawley*, 534 F.Supp. 1000 (D.Conn.1982). For the reasons set forth below, the motion is granted.

## I. *Background*

In 1971, the State of Connecticut established a "stream channel encroachment line" for the Hockanum River which borders plaintiff's property on the south. That line ran through the middle of plaintiff's property. Apparently relying on this line, the PZC in 1972 placed the property in a "Flood Plain Zone." The state subsequently changed the stream channel encroachment line to follow the banks of the Hockanum River and sent revised maps to the Town Clerk's Office for recording. In 1977 and 1978, the federal Department of Housing and Urban Development (HUD) conducted a Flood Insurance Study and prepared flood elevation maps in accordance with the National Flood Insurance Act of 1968, as amended. The Town participated in the study and provided HUD with maps, technical data and other information required by the HUD, apparently including the original state maps showing the encroachment line as established in 1971. The Flood Hazard and Boundary Map developed by HUD affected a significant portion of plaintiff's property. By letter dated May 24, 1979, HUD amended its map to eliminate substantial portions of the subject property from the National Flood Insurance requirement. The letter amendment was never attached to the Flood Haz-

ard and Boundary Map on file in the Town Clerk's Office. In October of 1979, the PZC adopted the original Flood Hazard Map as part of its new plan of development. The unamended HUD Map was incorporated by reference into the Town's Flood Hazard Zoning Regulations enacted in July 1981. The PZC thus effectively placed a major portion of plaintiff's property, unreduced in relation to the HUD letter, in a Flood Hazard Zone where development is restricted.

Claiming that defendants, by refusing to correct maps to reflect changes made by the state and federal governments, deprived him of his property in violation of his right to due process guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution, plaintiff seeks relief pursuant to 42 U.S.C. § 1983. In addition to the federal claims presented, plaintiff urges this court to consider two pendent state claims, sounding in fraud and inverse condemnation.

## II. *Discussion*

### A.

█ Plaintiff alleges that he was deprived of his property without due process of law and without compensation and that the actions of defendants, therefore, constituted violations of the fifth and fourteenth amendments redressable under 42 U.S.C. § 1983. *See, e.g., Turpin v. Mailet*, 591 F.2d 426 (2d Cir.1979) (per curiam), *cert. denied*, 449 U.S. 1016, 101 S.Ct. 577, 66 L.Ed.2d 475 (1980) ("there is no place for a cause of action against a municipality directly under the 14th Amendment, because the plaintiff may proceed .... under § 1983"). In light of this court's determination that plaintiff did not, in fact, possess a constitutionally protected property interest, both claims will be treated together for the purpose of further discussion.

The fifth and fourteenth amendments prohibit the deprivation of property with-

---

**1.** Plaintiff also asserts a claim under 42 U.S.C. § 1981 for racial discrimination. He alleges no facts to support an action under § 1981 and

conclusory allegations alone will not sustain such a claim.

out due process of law. The fifth amendment also guarantees that property will not be taken for public use without just compensation.[2] Section 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

The parties focus on whether a "taking" or deprivation of plaintiff's property occurred as a result of the enactment of zoning regulations. The parties fail to address a crucial threshold issue—whether plaintiff's interest in not having his property included in the flood plain zone is a property interest protected by the Constitution.

Plaintiff alleges a "property" interest in the reasonable use and development of his land. He claims that because development in a flood plain zone is regulated and restricted any placing of his property in such a zone must be scrutinized in relation to the guarantees of procedural and substantive due process contained in the United States Constitution. Plaintiff is correct if his is a protected property interest and if he was deprived of that interest.

"[T]he range of interests protected by procedural due process is not infinite." *Board of Regents v. Roth,* 408 U.S. 564, 570, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972).

To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.

*Id.* at 577, 92 S.Ct. at 2709. Property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law ... that secure certain benefits and that support claims of entitlement to those benefits." *Id.*

Title 8, Chapter 124, Section 8–2 of the Connecticut General Statutes is the enabling statute which grants authority to the zoning commission of each city, town or borough to regulate land use within its territorial limits. The statute states, in pertinent part:

Such zoning commission may divide the municipality into districts of such number, shape and area as may be best suited to carry out the purposes of this chapter; and, within such districts, it may regulate the erection, construction, reconstruction, alteration or use of buildings or structures and the use of land.... Such regulations shall be made in accordance with a comprehensive plan and shall be designed to lessen congestion in the streets; to secure safety from fire, panic, *flood* and other dangers; to promote health and the general welfare....

(Emphasis added). The statute also specifies that the regulations "shall be made with reasonable consideration as to the character of the district and its peculiar suitability for particular uses and with a view to conserving the value of buildings and encouraging the most appropriate use of land...."

Section 8–2 was amended in 1977, P.A. 77–509 Section 1, to provide: "Zoning regulations may be made with reasonable consideration ... for the protection of existing and potential public surface and ground drinking water supplies and may provide that proper provision be made for ... the control of erosion caused by wind and water." Although such guidelines are significant in assessing whether a regulation is reasonable, sound and rational in relation

---

**2.** In *Chicago, B. & Q. R.R. v. Chicago,* 166 U.S. 226, 17 S.Ct. 581, 41 L.Ed. 979 (1897), the Court held that the fifth amendment is made applicable to actions of the states by the fourteenth amendment.

to all the facts, such decisions cannot be made in a judicial vacuum.

Clearly, the statute places discretion in municipal authorities to regulate land use to prevent damage to persons and property due to flood. There is no requirement that the municipality follow guidelines established by the state or federal governments in determining whether a particular piece of land is vulnerable to flooding. A party who is aggrieved by the enactment of a regulation has the right to appeal to the superior court. Conn.Gen.Stat. § 8–9.[3] The court, in reviewing the decision of the local zoning authority, determines whether the zoning board acted illegally, arbitrarily or in abuse of the discretion vested in it. *Parks v. Planning & Zoning Comm'n,* 178 Conn. 657, 425 A.2d 100 (1979); *Figarsky v. Historic Dist. Comm'n,* 171 Conn. 198, 368 A.2d 163 (1976).

Nothing in the statute requires the local zoning authority to adopt the flood plain zone established by the state for the preservation of water resources when the zoning board is developing a comprehensive plan to regulate land use pursuant to § 8–2 of the General Statutes. If the zoning board does adopt the state's initial determinations, there is no express or implied requirement that every change subsequently made by the state must also be adopted. The failure of the board to comport with the delineations of either the state or federal agencies, as they may be amended, does not constitute a violation of a constitutional right as the board may fulfill its charge by making an independent determination of a boundary which accomplishes the authorized purposes.

Since the actions of the PZC were discretionary, plaintiff had, at most, a unilateral expectation that his property would be excluded from the flood plain zone. Such a unilateral expectation in the unrestricted enjoyment and use of his riverfront property does not constitute an interest protected by the Constitution. *Board of Regents,*

408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548. Plaintiff's claim is similar to the unilateral expectation in a certificate of location approval presented in *Yale Auto Parts v. Johnson,* 758 F.2d 54 (2d Cir.1985). There, the denial of the certificate, a prerequisite to obtaining an automobile junkyard license was claimed to have deprived plaintiffs of property without due process of law and they sought damages pursuant to 42 U.S.C. § 1983. Since the certificate would not necessarily have been granted, the application amounted to a unilateral expectancy and a property right guaranteed protection by the fourteenth amendment did not exist.

Here, plaintiff claims that defendants arbitrarily and erroneously placed his property in a flood plain zone because various amendments to related earlier determinations by state and federal agencies were not adopted by defendant PZC. The PZC function was not ministerial, but was discretionary and thus it was not required to adopt such changes. Therefore, plaintiff was not entitled to have his land excluded from the flood plain zone as a matter of right. Nor does it necessarily follow that, if the revised state maps had been recorded and the HUD Map amended, the PZC would have exempted, or been required to exempt, plaintiff's property from the flood plain zone. Plaintiff's unilateral expectancy that the PZC would adopt the revised state and federal maps is not a property interest protectible by the Due Process Clause. Therefore, plaintiff's claim that defendants deprived him of his property without due process and without just compensation must fail.

### B.

■ Even if plaintiff had a protected property interest in the commercial development of his land, the guarantees of due process are triggered only if a deprivation of that interest occurs or is threatened. Plaintiff alleges that the zoning regulations, which placed his property in a flood

---

**3.** Plaintiff has two such appeals pending in state court challenging the validity of the enactment of the zoning regulation on the ground that his

property was erroneously and arbitrarily placed in a flood plain zone.

hazard zone, effected a "taking" because commercial development within the zone is restricted or prohibited, thereby rendering his property worthless.

While regulation of land use can go so far as to constitute a taking, *Pennsylvania Coal Co. v. Mahon,* 260 U.S. 393, 43 S.Ct. 158, 67 L.Ed. 322 (1922); *United States v. Central Eureka Mining Co.,* 357 U.S. 155, 78 S.Ct. 1097, 2 L.Ed.2d 1228 (1958), the Supreme Court has noted that there is no set formula for when regulation becomes a "taking." *Goldblatt v. Town of Hempstead,* 369 U.S. 590, 82 S.Ct. 987, 8 L.Ed.2d 130 (1962).

> Traditionally, we have treated the issue as to whether a particular governmental restriction amounted to a constitutional taking as being a question properly turning upon the particular circumstances of each case.... In doing so, we have recognized that action in the form of regulation can so diminish the value of property as to constitute a taking.... However, the mere fact that the regulation deprives the property owner of the most profitable use of his property is not necessarily enough to establish the owner's right to compensation.

*Central Eureka Mining Co.,* 357 U.S. at 168, 78 S.Ct. at 1104 (citations omitted).

The *Goldblatt* court, 369 U.S. 590, 82 S.Ct. 987, 8 L.Ed.2d 130, held regulation of dredging and pit excavating not to result in a taking even though it prevented plaintiffs from continuing their business. If a zoning ordinance "is otherwise a valid exercise of the town's police powers, the fact that it deprives the property of its most beneficial use does not render it unconstitutional." *Id.* at 592, 82 S.Ct. at 989. Comparison of values before and after the enactment of the regulation would bear on whether a taking has occurred but would not be conclusive. *Id.* at 594, 82 S.Ct. at 990; *cf. Hadacheck v. Sebastian,* 239 U.S. 394, 36 S.Ct. 143, 60 L.Ed. 348 (1915) (reduction in value from $800,000 to $60,000).

> Although the fourteenth amendment protects a property owner from government's direct interference with the use of his property when that interference substantially eliminates the value of his title to it, ... it does not protect the owner from fluctuations in the value of his property resulting from governmental decisions to put neighboring public property to a lawful, albeit unattractive, use.

*Ancarrow v. City of Richmond,* 600 F.2d 443, 447 (4th Cir.), *cert. denied,* 444 U.S. 992, 100 S.Ct. 523, 62 L.Ed.2d 421 (1979). "[T]he existence of value alone does not generate interests protected by the Constitution against diminution by the government, however unreasonable its action may be." *Id.*

Where the Commissioner of Transportation had condemned all or part of three parcels of land, including the sole means of access to the property, the remaining portion of one of the parcels was held to have been confiscated. *Wright v. Shugrue,* 178 Conn. 710, 425 A.2d 549 (1979).

> This court has observed that when property cannot be utilized for *any reasonable and proper purpose,* as where the economic utility of the property has, for all practical purposes, been destroyed, a confiscation or taking in the constitutional sense has occurred.

*Id.* at 713, 425 A.2d 549 (emphasis added).

A regulation that changed the classification of plaintiffs' property from residence zone to flood plain district was held to be confiscatory. *Dooley v. Town Plan & Zoning Comm'n,* 151 Conn. 304, 197 A.2d 770 (1964). The regulation permitted only such uses as recreational areas, wildlife sanctuaries, and farming. The permitted uses were found to have placed "such limitations on the area that ... the regulation amounts, in effect, to a practical confiscation of the land." *Id.* at 309, 197 A.2d 770. The regulation deprived plaintiffs of "any worthwhile rights or benefits in their land." *Id.* at 312, 197 A.2d 770.

The thread running through these cases is that a taking occurs only when a landowner, though left with title, is deprived of all reasonable or practical use of his property. Such is not the predicament of plaintiff herein. Under Article VI—Special Dis-

trict Zoning Regulations of the Town of East Hartford, although land use within a flood hazard zone is regulated, a landowner is not deprived of substantially all worthwhile benefit in or use of his property.

A Development Permit for a flood hazard zone, Section 612.1, may be granted or denied by the Planning and Zoning Commission. Section 612.2. A variance from the ordinance can be requested of the Town's Zoning Board of Appeals, Section 612.4, subject to consideration of specified factors including any danger that materials from the proposed facility will be swept onto others' lands; the importance of the proposed facility to the community; the compatibility of the proposed use with existing and anticipated development; and the effect on costs of governmental services during and after a flood.[4] Section 612.4a. Also, flood hazard zone construction standards are set forth. Section 613. Clearly, at least limited use of the land is thereby permitted.

Unlike the ordinance in *Dooley*, the East Hartford regulations do not so restrict the permitted uses as to freeze the area "into a practically unusable state." *Id.* at 309, 197 A.2d 770. The ordinance here simply regulates construction and use so that development in such a zone does not increase the potential for personal and economic harm from a flood. Although the resulting cost of commercial development may be higher, the plaintiff is by no means deprived of all reasonable use of his property. Since plaintiff's property has not been taken, plaintiff is not entitled to the relief requested.

### III. *The State Law Claims*

In light of the disposition of plaintiff's federal law claims, the pendent state law claims are dismissed. *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966).

4. Defendants claim, and plaintiff does not dispute, that plaintiff has requested and received several permits for development within the

Summary judgment shall, therefore, enter dismissing all claims raised in the complaint.

SO ORDERED.

flood hazard zone. The court's view of the ordinance and applicable case law obviates the need to consider the nature of those permits.