[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiffs Peter and Maureen Klienknecht ("plaintiffs") appeal from the defendant Stonington Zoning
Board of Appeals ("ZBA") decision of June 12, 1990 denying plaintiffs' request for a variance. The plaintiffs are owners of the subject real property which is located at Lord's Point, Quarry Lane, Stonington, Connecticut.
In 1978 the plaintiffs acquired title to the real property, subject of this action. (Record Item IIH). On April 18, 1990 the plaintiffs filed an application with the ZBA requesting a variance from section 3.21 and 3.25 of the Stonington Zoning Regulations (Record Item IB). Chapter 3.2 of the zoning regulations set forth the criteria for coastal residential real property. More specifically, plaintiffs requested a variance from the minimum rear yard setback and minimum floor area ratio imposed by section 3.21, as well as a variance from the non-infringement buffer requirements of section 3.25. Id.
On June 12, 1990 the ZBA conducted a public hearing CT Page 6081 and voted unanimously to reject plaintiffs' request for a variance. (Record Item IF. Record Item II). It is from this decision that the plaintiffs appeal.
A trial court is not at liberty to substitute its judgment for that of the administrative tribunal. See Frito-Lay, Inc. v. Planning Zoning Commission, 206 Conn. 554,572-73 (1988). The court is only to determine whether the agency has acted illegally, arbitrarily or in abuse of its discretion. Raybestos-Manhattan, Inc. v. Planning Zoning Commission, 186 Conn. 466, 470 (1982). The court is simply to determine whether the record reasonably supports the conclusions reached by the agency. Primerica v. Planning 
Zoning Commission, 211 Conn. 85, 96 (1989).
Aggrievement is a prerequisite to maintaining an appeal. See Smith v. Planning and Zoning Board, 203 Conn. 317,321 (1987). The plaintiffs as owner of the subject property are aggrieved. See Bossert Corp. v. Norwalk, 157 Conn. 279, 285
(1985).
A party taking an appeal must do so by commencing service of process within fifteen days from the date that notice of the decision was published. Connecticut General Statutes section 8-8 (b). The appeal shall be returned to the court in the same manner and within the same periods of time as prescribed for civil action brought to that court. Id. The ZBA's decision was published on June 20, 1990 and the defendant was served on July 2, 1990. This appeal is timely brought.
The request for a variance that is the subject of this appeal is the third request for a variance filed by the plaintiffs before the Stonington ZBA (Record item IM, 2). On February 13, 1990, the ZBA held a public hearing on application 90-012. The plaintiffs' second application sought a variance from the same three requirements imposed by Section 3.21 and 3.25 of the Stonington Zoning Regulations. (Id. at 3. Record Item IB).
Section 8-6 provides that,
 No such (zoning) board (of appeals) shall be required to hear any application or the same variance or substantially the same variance for a period of six months after a decision by the board or by a court on an earlier such application.
Connecticut General Statutes section 8-6. CT Page 6082
The ZBA determined that the request for a variance which is the subject of this appeal was substantially the same as the variance request of February 1990 (Record IM, at 7). Such a determination is one that can be properly made by the ZBA. Malmstrom v. Zoning Board of Appeals, 152 Conn. 385, 391 (1965). A zoning board of appeals is ordinarily without the power to reverse its prior decision unless there has been a change of conditions or other considerations that have arisen materially affecting the merits. Id. See also Grillo v. Zoning Board of Appeals, 206 Conn. 362, 367 (1988). The Commission decided to hear the petition and waive the "six month" waiting period (Record IM at 9, 10). The representation of the petitioner being that certain material in addition to that which had previously been before the Commission was now available, more particularly an expert to demonstrate the non-feasibility of the site as a boating and or yachting facility.
The subject property is a peninsula extending out into Long Island Sound. The lot consists of 32,100 +/- sq. feet, is 125' wide and 160' in length, surrounded by the sea on 3 sides. It is located in a RC-120 zone (coastal residential). RC-120 Zoning Bulk Requirements are:
 Minimum Lot Area 120,000 sq. feet Frontage 300 feet Yards 75 front 75 side 100 rear Max Heights 25 feet (from 100 year flood hazard level) Floor Area Ratio .025 that may be applicable Permitted Uses Are:
 A — Single Family B — Agriculture Special use permits that may be applicable are:
 A — Agriculture B — Boating facility D — Kennel M — Yachting facilities
Section 3.25 Buffer Requirement as it pertains to this case provides a non-infringement area of 100' from tidal marsh and significant natural resources such as estuary shore line and bodies of water excepting only boat and yacht facilities after other necessary permits are obtained. CT Page 6083
It is noted that the plaintiffs at the time of the hearing requested the ZBA to address two problems. The first being the effect of section 3.21 of Zoning ordinance which limited any building on the site to 512 1/2 sq. feet of floor space and second, the effect of section 3.25 which imposed 100% non-infringement from water front on the peninsula shaped lot, effectively prohibiting residential building of any size and shape.
Specifically, plaintiff represented that other issues that must ultimately be ruled upon such as safety and septic matters are not before the ZBA. T35. Whether the Federal Emergency Management Agency approves a home design or whether a Public Health Code permits the installation of septic or some other agency allows the site to be tied into or connected to existing sewers were not matters before the ZBA nor are such matters before this court for review or consideration. To require the landowners to seek relief from one or more regulators in different branches of government as a prerequisite to bringing suit against the Commission on a taking claim could create a bureaucratic nightmare. De St. Aubin v. Flacke,496 N.E.2d at 879, 884 (N.Y. 1986).
Accordingly the court will address those matters that are properly before the ZBA and now on appeal to this court.
This subject lot is larger than other lots in the, surrounding area. While other lots in the area are zoned RM-20, the subject lot, the end of the peninsula, is zoned differently, more restrictively, RC-120. Why and how this one lot is so zoned; has been spotted to be so uniquely designated, is without explanation. In any event, it is a non-conforming lot in the more restrictive zone. The problem of building on such an undersized non-conforming lot is addressed in Section 2.32. All of the bulk requirement of building on an undersized non-conforming lot are satisfied by applying this section excepting therefrom the "Floor Area Ratio".
The "Floor Area Ratio" is a bulk requirement, the effect of which is to limit the size of the home in proportion to the lot area. "Floor Area Ratio" is defined as "the total floor area of all the buildings on a lot in square feet, divided by the area of such lot in square feet" (Zoning Regulation, Definitions Sec. 1.32.37) In parenthesis after the definition it states. "(lot area as prorated by Section 7.18)." There is no Section 7.18 of the zoning ordinance.
The zoning ordinance as part of the "Bulk Requirement" for each zone sets out: CT Page 6084
 Minimum Lot Area Frontage Yards Maximum Height Floor Area Ratio
For the zone in which the subject property is located RC-120 the Floor Area Ratio is .025.
Section 7.1-8B excludes any land below 3 feet of mean sea level as area to be considered in calculating the Floor Area Ratio.
Excluding that area from the subject site the area of the lot is 20,500 +/- (Record Item Exhibit C) Applying the formula .025 = Floor Area divided by 20,500. The floor area calculates to be 512 1/2 sq. feet.
Nowhere in the Zoning Ordinance is there an explanation, statement or direction that Floor Area is a maximum area allowable or a minimum area allowable. In this case that issue is moot. To build a residence home with only 512 1/2 sq. feet of floor area would certainly be out of harmony with the house sizes for the surrounding area. To limit the size of the home to 1/3 or 1/4 the size of the surrounding homes in the area because it would be built on an undersized, non-conforming lot that is zoned more restrictively as RC-120 imposes an unreasonable hardship. See Pollard v. Zoning Board of Appeals,186 Conn. 32, 39-40 (1982); Adolphson v. Zoning Board of Appeals, 205 Conn. 703, 712-13 (1988). The plaintiff in this case has petitioned the ZBA to vary the floor area ratio from .025 to .085 to permit a floor area of 1,742 1/2 sq. feet. Such a variance imposes no greater threat to public health, safety and welfare than the substantially smaller home would have done. Such a variance will permit a home the size of which will be in harmony with the neighboring homes. (Exhibit IIP). The court finds that the ZBA in failing to grant a variance of the Bulk Requirement Floor Area Ratio acted arbitrarily.
Section 3.25 Buffer Requirement states as follows:
 Non-infringement area of 100 feet minimum from tidal marsh and significant natural resources such as, but not limited to, inland wetlands, estuary shoreline, and bodies of water, excepting only boat and yacht facilities after necessary State, Federal and local permits are acquired. CT Page 6085
Testimony was present through an expert that the subject site had extremely limited potential as either a yachting or boating facility. The use would be limited to 8 boats. T 24, 25. The water area immediately around the site is difficult to navigate. Boats would have to be moved during more severe storms (T26). The petitioner has offered substantial and unrefuted evidence that the site is not reasonably feasible for the use of a boat or yachting facility.
Excepting the use of the site for such yachting and or boating facility all other building is subject to Section 3.25, the non-infringement 100' requirement which effectively deprives the plaintiff of any use of the property.
The Connecticut Supreme Court has set forth the standards regarding what constituted a taking of property in this context. Such a taking occurs when there is "substantial interference with private property which destroys or nullifies its value or by which the owner's rights to its use or enjoyment is in a substantial degree abridged or destroyed." Textron, Inc. v. Wood, 167 Conn. 334, 346 (1974), citing Dooley v. Town Plan 
Zoning Commission, 151 Conn. 304, 311, 314 (1964); see also Chapman v. Zoning Board of Appeals, 23 Conn. App. 441, 443
(1990). However "(m)erely because the total value of the property has decreased does not justify a conclusion that there has been an unconstitutional taking. . . A property may be subject to reasonable (land use) restraints without resulting in a taking." Manor Development Corporation v. Conservation Commission, 180 Conn. 692, 695-96 (1980).
"Public regulation of land use and development pursuant to the exercise of the police power often results in some diminution of the property rights of a particular landowner." Luf v. Southbury, 188 Conn. 336, 349 (1982). The court in Luf stated:
 (I)t has often been noted that the police power, which regulates for the public good the uses to which private property may be put and requires no compensation, must be distinguished from the power of eminent domain, which takes private property for a public use and requires compensation to the owner. . . . The difference is primarily one of degree, and the amount of the owner's loss is the basic criterion for determining whether a purported exercise of police power is valid, or whether it amounts to a taking necessitating the use of the power of eminent domain. CT Page 6086
Id. at 349, quoting Figarsky v. Historic District Commission,171 Conn. 198, 210-11 (1976).
"(W)hether a claim that a particular governmental regulation or action taken thereon has deprived a claimant of his property without just compensation is an `essentially ad hoc factual inquir(y)'". Gil v. Inland Wetlands Watercourses Agency, 219 Conn. 404, 406 (1991), quoting Penn Central Transportation Co. v. New York City, 438 U.S. 104, 124,98 S.Ct. 2646, 57 L.Ed.2d 631 (1977), reh. denied 439 U.S. 883,99 S.Ct. 226, 58 L.Ed.2d 198 (1978). However, a land use ordinance which permanently restricts the use of the property to such an extent that it cannot be used for any reasonable purpose is an unconstitutional taking of the property. See Bartlett v. Zoning Commission, 161 Conn. 24 (1971).
The Court has used both the practical confiscation test and the balancing test to determine whether land use regulations as applied amount to an unconstitutional taking of property. The Supreme Court, in Gil v. Inland Wetlands 
Watercourses Agency, 219 Conn. 404 (1991), discussed the claims of unconstitutional takings made in. Bartlett v. Zoning Commission, 161 Conn. 24 (1971) and Dooley v. Town Plan Zoning Commission, 151 Conn. 304 (1964). In Bartlett, the Court applied the practical confiscation test to a takings claim based on the enforcement of a new zoning regulation which limited the use of the landowner's tidal marsh lands property to uses such as walkways, duck blinds and boating facilities. The court in Bartlett ruled that such restrictions were tantamount to an unconstitutional taking of one's property without just compensation. Gil v. Inland Wetlands Watercourses Agency,219 Conn. at 413. In Dooley, after the zoning commission changed the zoning classification of the landowner's property from a residential to a flood plain district, the only permitted uses were as parks, marinas, wildlife sanctuaries, nursery gardening and the like. The Supreme Court affirmed the ruling of the trial court that the permitted uses were either nonviable with respect to the landowner's property, or would not provide the landowner with any reasonable or practicable means of obtaining income from his property; thus, the zoning regulations, as applied to the landowners property, amounted to a practical confiscation of his land. Gil v. Inland Wetland Watercourses Agency,219 Conn. at 413-414.
After discussing the above cases, the court in Gil stated the rule that:
 (A) landowner, who purchased property with a reasonable expectation of residential or CT Page 6087 commercial development, has suffered a taking if regulatory constraints allow him to use his land only in its natural state without any economically viable alternative use thereof. While the state is unquestionably entitled to protect wetlands from potentially harmful development, it is not entitled to impose the entire cost of such protection upon a landowner who purchased property with the reasonable expectation of developing it for residential or business purposes. As Justice Holmes remarked, `a strong public desire to improve the public condition is not enough to warrant achieving the desire by a shorter cut than the constitutional way of paying for the change.'
Gil v. Inland Wetlands Watercourses Agency, 219 Conn. at 414, quoting Pennsylvania Coal Co. v. Mahon, 260 U.S. 393,43 S.Ct. 158, 67 L.Ed 322 (1922).
Finally, the court in Gil noted that:
 (T)he plaintiff is not entitled to judicial review of the merits of his regulatory takings claim until he has met the requirement of establishing the finality of the agency determination. . . . To demonstrate the requisite finality, a property owner asserting a regulatory takings claim bears the burden of proving that the relevant government entity will not allow any reasonable alternative use of his property.
Id. at 415 (citations omitted) (emphasis in original).
There is no question that a waterfront lot measuring 160' x 125' that cannot be used for anything has nominal value while a lot of that size that can be built upon for use as a residence has substantial value. Although there is no appraiser who testified as to such value, there is ample evidence in the record to support such a finding.
When applied, the 100' non-infringement area completely covers this lot and the ZBA's failure to vary its application to the subject lot amounts to "practical confiscation". CT Page 6088
Accordingly, the appeal is sustained.
JOHN F. WALSH, J.