[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
1. Statement of Facts
The subject property, situated in an RA-2 zone and primarily within the confines of a private association known as Rock Ridge Association, consists of 16.27 acres of land located on Lake Avenue in Greenwich. (Return of Record, ("R.R."), Items 1, 4 p. 7, 15r). The property and improvements, currently owned by defendant Daycroft, consist of a number of buildings previously utilized as a boarding school. (R.R., Item 4 p. 7). In continuing the use of the property as a school, applicant/defendant JEI, the contract purchaser of the subject property, proposed to renovate the existing structures, create a parking area for school buses, and relocate the tennis court. (R.R. Items 1b, 4 pp. 10-12, 17). At the October 19, 1989 hearing on its special exception, applicant/defendant JEI maintained that the proposed school's 450 students and support staff would arrive via 18 buses and 15 cars from the surrounding counties and states, (R.R. Item 4, p. 19), and that the traffic CT Page 577 impact would be minimal. (Id. p. 33).
Subsequent to the hearing, the PZB continued the application until November 15, 1989 in order to provide time for the town's traffic engineer, Garo Garabedian, to review the applicant's traffic impact study. (R.R. Item 15a).
On November 29, 1989, the PZB held a second hearing concerning applicant/defendant JEI's application for a special permit. (R.R. Item 14). The crux of the second hearing concerned discussions and expert testimony on potential traffic hazard and congestion issues associated with defendant JEI's application. (R.R. Item 14, p. 4).
On December 11, 1989, the PZB granted defendant JEI's special exception subject to thirteen conditions. (R.R. Item 17). Notice of the decision was published on December 11, 1989, (R.R. Item 19) and mailed on December 12, 1989. (R.R. Item 17).
In a timely fashion, two separate administrative appeals emanated pursuant to Conn. Gen. Stat. 8-5 et seq. In the first action, the plaintiffs, Committee to Save Lower Lake Avenue ("Committee"), Susan M. Morton, Edward and Laura Wellman, and Dorothy and Timothy Crowley, appeal a decision of the defendant Planning and Zoning Board of Appeals of the Town of Greenwich, ("PZB"), granting to defendants, Daycroft School, Inc. ("Daycroft"), and the Japanese Educational Institute of New York ("JEI"), a special exception with thirteen conditions to the Building Zone Regulations of the Town of Greenwich. In a second appeal of the PZB's decision, the plaintiffs, Rock Ridge Association, Inc. ("Rock Ridge") and Leslie W. Cooper, instituted a similar action against the same defendants. On April 2, 1990, the court consolidated the two separate appeals which are currently before this court. See Committee to Save v. Greenwich, D.N. 0105638, Decision, Item 103.
The issue in this case is whether the decision of the Planning and Zoning Board ("PZB") of the town of Greenwich to grant a special permit subject to thirteen (13) conditions was illegal, arbitrary, or in abuse of its discretion. It is the court's decision that the record supports the Greenwich Planning and Zoning Board of Appeals granting of the permit and that, therefore, plaintiffs' appeal should be dismissed.
II. Discussion
Aggrievement is a prerequisite to maintaining an appeal. Conn. Gen. Stat. 8-8a; Caltabiano v. Planning and Zoning Commission, 211 Conn. 662, 668 (1989). "Unless the plaintiff alleges and proves aggrievement, his case must be dismissed." CT Page 578 Fuller v. PZC, 21 Conn. App. 340, 343 (1990).
At the hearing held on June 27, 1990, the court heard evidence concerning aggrievement. Plaintiffs Rock Ridge and Cooper introduced evidence which revealed that each owns property which abuts or is within a radius of one hundred feet from the subject property. Therefore, both plaintiffs have established the prerequisite aggrievement in accordance with Conn. Gen. Stat. 8-8. See also Smith v. PZB, 203 Conn. 317,321 (1987).
Similarly, the second set of plaintiffs, namely, Crowley, Morton, and Wellman, testified as to their aggrievement. Plaintiffs Crowley and Morton established the prerequisite aggrievement because each owned land either abutting or within 100 feet of the subject property. Plaintiff Wellman, however, testified that he personally did not own property abutting or within 100 feet of the subject property but rather, sought to testify as to Mrs. Wellman's aggrievement. Plaintiff Committee failed to introduce any evidence concerning its aggrievement. Therefore, the failure of plaintiffs Wellman and Committee to allege and prove aggrievement precludes them from taking an appeal.
A. Scope of Review
The PZB's decision will only be disturbed if it is established that the decision was illegal, arbitrary, or in abuse of the board's discretion. Frito-Lay, Inc. v. PSC,206 Conn. 554, 573 (1988). "The question is not whether the trial court would have reached the same conclusion but whether the record before the agency supports the decision reached." Primerica v. Planning and Zoning Commission, 211 Conn. 85, 95
(1989). The burden of proof to demonstrate that the board acted illegally, arbitrarily or in abuse of discretion is upon the plaintiff. Belt Havura v. Zoning Board of Appeals, 177 Conn. 440,444 (1979). If any one reasons set forth by the Commission is supported by the record and pertinent to the necessary considerations, it is enough to support its decision. Huck v. Inland Wetlands Watercourses Agency, 203 Conn. 525, 539-40
(1987).
When acting upon a special permit or exception, the board acts in an administrative capacity. Sheridan v. Planning Board,159 Conn. 1, 16 (1969) "The proposed use . . . must satisfy . . . the conditions necessary to protect the public health, safety, convenience and property values. . . . A.P. W. Holding Corp. v. Planning and Zoning Board, 167 Conn. 182, 184-85 (1974). In determining questions such as these, the agency is close to the circumstances and conditions which created the problem and shape CT Page 579 the solution. Stiles v. Town Council, 159 Conn. 212, 219
(1970).
Conn. Gen. Stat. 8-2, which authorizes special permit regulations, states that such regulations shall be:
 "In accordance with a comprehensive plan and shall be designed to lessen congestion in the streets; to secure safety from fire, panic, flood and other dangers; to promote health and the general welfare . . . and to facilitate the adequate provision for transportation . . . schools . . . and other requirements. Such regulations shall be made with reasonable consideration as to the character of the district."
Similarly, the Zoning Regulations of the Town of Greenwich Zoning Regulations allow the granting of special permits' 6-17; subject to the satisfaction of regulation requirements and standards; 6-15, 6-17, and 6-20. (R.R. Item 20). In substance, the regulatory provisions provide that the PZB shall consider whether the applicant's proposal is in accord with the public convenience, safety, and welfare, 6-15 (a); and further provide that the PZB shall consider traffic patterns and congestion; 6-17 (d) and 6-20 (c)(1).
Therefore, the statutes and town regulations require the PZB to consider traffic patterns, safety, and congestion before approving a permit application like the one currently before the court.
Plaintiffs Morton and Crowley contend that the PZB's decision is illegal, arbitrary, and constitutes an abuse of its discretion because the PZB's findings do not comply with regulatory standards of the Town of Greenwich permitting special permits. More specifically, plaintiffs maintain that the PZB lacked sufficient evidence to find that defendant JEI's proposed use of the land and transportation agenda would not create a traffic hazard or congestion problem in violation of 6-15 and 6-20.
The record reveals that traffic was thoroughly considered. Storch Associates prepared a traffic impact study for defendant JEI in connection with the proposed use of the subject property and its attendant transportation proposal. (R.R. Item 5c). Storch concluded that the school "will have a negligible traffic impact to the existing roadway network." (Id. at 8). Mr. Spear, a Storch Associates traffic engineer, testified that the school's traffic impact would be minimal. (R.R. Item 4, p. 31). At the November 29, 1989 hearing, Mr. James Ford, a licensed CT Page 580 traffic engineer with 22 years experience, also from Storch, testified that since the proposed school would generate minor traffic, the current traffic level of service C could be maintained on the street without any safety problems. (R.R. Item 14, pp. 87-90). The record reveals that the PZB heard additional testimony from Mr. Ford which analyzed and disputed the findings contained in the plaintiffs' submitted report by Mr. Grenier, who is not a licensed traffic engineer. (R.R. 14, pp. 85-99, 124-129).
The record further discloses that the town's traffic engineer, Mr. Garo Garabedian, testified that the town's planning and zoning office has accepted a traffic level of C as its standard. (R.R. Item 14, p. 135). Mr. Garabedian further testified that the traffic increase created by the proposed school would still be within the Acceptable C level of traffic. (R.R. Item 14, 143; 172-73). By looking at the worst case scenario, if the traffic generated figures for a "typical elementary school", or 122 trips generation, were used, Mr. Garabedian concluded that the traffic would be borderline acceptable. (R.R. Item 14, pp. 131-134, 143). However, if the board incorporated JEI's proposed transportation plan of 15 cars and 18 buses, rather than the fictitious 122 vehicles, traffic would be at a level of service C. (Id. at 143, 145).
On December 11, 1989, the PZB granted defendant JEI's special exception subject to thirteen conditions. (R.R. Item 17). In its decision, the PZB noted that the appeal was subject to the conditions because:
 The traffic generation, of no more than 18 school buses/vans and 15 cars, being the most crucial issue in the consideration of this use, was deemed to be at an acceptable level of service by the Town's Traffic Engineer, although there was expert testimony that the level of service with the addition of the school traffic would fall below an acceptable level.
(R.R. Item 18).
Although there was testimony that the traffic increase of 18 buses and 15 cars could contribute to the existing traffic problems in Greenwich, the PZB is not obligated to believe any witness, including an expert. Parish of St. Andrew's Church v. Zoning Board of Appeals, 155 Conn. 350, 359 (1967; Tanner v. Conservation Comm'n, 15 Conn. App. 336, 341 (1988). Moreover, because most experts testified that the proposed school's traffic level would be acceptable, and because lay commissioners may rely on their personal knowledge regarding simple matters within their competence such as traffic congestion and safety; CT Page 581 see Feinson v. Conservation Commission, 180 Conn. 420, 427
(1980); the PZB could fairly and reasonably conclude that the minimal increase in traffic would not aggravate the Town's existing traffic problems. Therefore, the PZB's conclusion concerning the traffic impact is unquestionably supported by the record.
Next, plaintiffs Morton and Crowley challenge conditions number 6 and 11 of the special exception on the ground that the record lacks evidence to support said conditions.
Condition number 6 states that:
 At least 90% of the student body shall be transported to and from the school by bus.
(R.R. Item 18).
Condition number 11 requires that:
 Traffic of school buses/vans shall be equalized between the two entrances to the school on Ridgeway and Lake Avenue.
(R.R. Item 18).
The agency may impose conditions on a special permit provided its own regulations authorize it. Parish,155 Conn. at 354. As previously noted, Conn. Gen. Stat. 8-2 authorizes local boards to grant special permits subject "to conditions necessary to protect the public health, safety, convenience and property values." (emphasis added). Additionally, sections 6-15, 6-17, and 6-20 of the Greenwich Zoning Regulations condition the granting of any special exception upon the requirement that the proposed use not increase traffic hazards or cause safety and welfare detriment to the public. (R.R. Item 20).
In Lurie v. Planning and Zoning Commission, 160 Conn. 295
(1971), the court reasoned that a planning and zoning commission had the authority to reasonably condition the grant of a special permit upon certain on and off-site changes and improvements by the applicant, as well as by municipal agencies beyond the commission's control. In Lurie, the commission articulated specific conditions relating to the imposition of an off-site traffic guard and certain road improvements. Id. at 297-98. The Supreme Court in Lurie held that the commission "properly determined exactly what off-site highway and traffic changes were desirable in the interests of public safety and then made the effectuate of those specific changes a condition of the special permit." Id. at 300. In so concluding, the Court CT Page 582 recognized that Conn. Gen. Stat. 8-2 permitted local authorities "to impose certain standards and conditions on the use of property when the public interest required it." Id. at 305.
Consonant with Lurie, the PZB has the authority from the statutes and from its own regulations to grant a special permit subject to conditions relating to traffic congestion and safety concerns. The record reveals that the PZB conditioned the special permit "to provide, including among other things, safeguards for the maintenance of an acceptable level of service." (R.R. Item 18). Because the PZB considered extensive evidence concerning traffic patterns and safety, the PZB's reasonable imposition of traffic related conditions is supported by both the regulations and record.[1]
Next, plaintiffs Rock Ridge and Cooper argue that the PZB's decision was illegal, arbitrary, and in abuse of its discretion on the following two grounds:
 (1) Conditions 11 constitutes an unconstitutional taking of plaintiff Rock Ridge's property, and
 (2) the PZB lacked the authority to impose Conditions 9 and 11 because said conditions violate the town's regulations.
Each shall be individually discussed.
By way of background, it is necessary to comprehend that condition 11[2] equalized the proposed school's traffic between two separate entrances, the Ridgeway, a private road of Rock Ridge Association, and Lake Avenue, a public road.
At the hearing before this court, counsel for plaintiffs maintained that there was no public need demonstrated to permit an effective "taking" of the association's private roads. Plaintiffs contend that the PZB's imposition of a condition equalizing traffic between the Ridgeway and Lake Avenue is unconstitutional and an unreasonable use of discretion because the evidence shows that the proposed school's potential increase in traffic would not affect the acceptable level of service on Lake Avenue.
First, both the statutes; Conn. Gen. Stat. 8-2 and the town regulations; 6-15, 6-71 and 6-20 (R.R. Item 20); require that traffic hazard, congestion, and public safety be considered by the PZB. The PZB heard exhaustive testimony concerning the various traffic issues prior to rendering its decision. (R.R. Item 14). In its decision, however, the PZB noted the expert testimony that the increase in traffic from the proposed school CT Page 583 could create traffic at an unacceptable level. (R.R. Item 18). Thus the PZB, in condition 11, equalized the traffic between the Ridgeway and Lake Avenue entrances. (Id.). Because the traffic congestion affects public safety, a legitimate concern of the PZB, the PZB was authorized to impose condition 11.
Secondly, as regards plaintiffs' unconstitutional taking claim, "[a]ll property is held subject to the right of government to regulate its use in the exercise of the police power, so that it. . . may promote its health, morals, safety and welfare." Figarsky v. Historic District Commission, 171 Conn. 198,206 (1976). This regulatory power of the government is limited to means which are not "destructive, confiscatory, or so unreasonable as to be arbitrary." Id. at 207. Confiscation only occurs when "no reasonable use may be made of the property and it becomes of little or no value to the owner." Id. at 211; see Pennsylvania Coal Co. v. Mahon, 260 U.S. 393, 413 (1922); or when the municipalities regulation prevents the owner from making any use of the land. Tondro, Connecticut Land Use Regulation, p. 7; see also Bartlett v. Zoning Commission,161 Conn. 24, 31 (1971).
Research of Connecticut case law discloses that the amount of the owner's loss is the major factor in determining whether a regulation as applied to a particular piece of property amounts to a taking. Luf v. Southbury, 188 Conn. 336, 349-52 (1982) (court held impairment of access rights and diminution in total value of property did not constitute an unconstitutional taking); DelBuono v. Board of Zoning Appeals, 143 Conn. 673,678 (1956) (classification restricting utilization of property for any reasonable purpose constitutes unreasonable taking); Corthouts v. Newington, 140 Conn. 284., 289 (1953) (confiscation found where zoning ordinance unreasonably restricted property for any feasible purpose).
In this case, the record reveals that the subject property was deeded to Rosemary Hall, a predecessor to Daycroft, in 1903. (R.R. Items 14 p. 167; 15y). This deed granted Rosemary Hall, its successors and assigns, the right to use in common the ways and avenues of said Rock Ridge. (R.R. Item 15y). The PZB heard testimony that traffic generated by Rosemary Hall, including its buses, previously accessed the school via Rock Ridge's Road network. (R.R. Item 14 pp. 29, 160). The record further indicates that other buses currently utilize both Rock Ridge Avenue and the private Ridgeway. (R.R. Item 14, pp. 38, 160). Plaintiff introduced no evidence regarding either diminution in the total value of their property or that they have been deprived of any reasonable use of Rock Ridge's Road network. Because plaintiffs have not established that they have been deprived of any reasonable use or that the value of their CT Page 584 property has been reduced, the PZB's conditional grant of defendant JEI's special permit does not elevate to an unconstitutional taking.
Plaintiffs Rock Ridge and Cooper further argue that the PZB improperly imposed conditions 9 and 11 because said conditions are not authorized by the Town's regulations. Plaintiffs' challenge to condition 11, dealing with traffic equalization, mirrors plaintiffs Morton and Crowley's challenge to condition 11, and thus, it may be disposed of in accordance with the preceding discussion.[3] Accordingly, the following discussion is limited to condition 9.
Plaintiffs contend that the Town regulations specifically 6-156, prohibit the habitual parking of vehicles in a residential zone. Plaintiffs maintain therefore, that condition permitting school bus parking on the subject property, is unauthorized.
Condition 9 states that:
 School buses/vans shall remain on the premises during the day except for one school bus which will transport the drivers to and from the site.
(R.R. Item 18).
 Section 6-156 of the Town Regulations provides in part that:
 (a) On lots in all residence zones the garaging or habitual outdoor parking of motor vehicles other than passenger cars is prohibited, except that the garaging of any motor vehicles used primarily on the premises shall be permitted.
(R.R. Item 20)
Because condition number 9 is in violation of this regulation, it may be revoked, set aside and declared void and of no force. Beckish v. Planning Zoning Commission, 162 Conn. 11,198 (1971).
 "The imposition of a void condition, however, does not necessarily render the whole decision illegal and inefficacious. If the decision is otherwise supported by sufficient grounds as found by the board, a modification of the decision may be decreed with a view toward ending further litigation." Parish of St. Andrew's Church v. Zoning Board of Appeals, 155 Conn. 350, CT Page 585 354-55, 232 A.2d 916 (1967). On the other hand, "[w]here a condition, which was the chief factor in the granting of an exception, is invalid, the exception must fall. . . ." 101A C.J.S., Zoning and Land Planning 238. This court has reasoned that a condition imposed by a zoning authority is severable, from a variance that is otherwise valid, if the removal of the condition "would in no way destroy the value or effectiveness" of the variance. Langer v. Planning Zoning Commission, 163 Conn. 453, 459, 313, A.2d 44 (1972). On this basis, we have held that the dispositive consideration is whether the condition was an "integral" part of the Zoning authority's decision to grant the variance and, if so, the variance, even if valid in all other respects, cannot be upheld. Langer v. Planning Zoning Commission, supra, 549; Beckish v. Planning Zoning Commission, supra, 18-19; Farina v. Zoning Board of Appeals, 157 Conn. 420, 424, 254 A.2d 492 (1969), Parish of St. Andrew's Church v. Zoning Board of Appeals, supra, 355.
Vaszauskas v. CBA, 215 Conn. 58, 66 (1990).
In this case, the record discloses that the critical issue before the PZB concerned traffic congestion and public safety. (R.R. Item 14, p. 4). The record shows that the PZB heard considerable evidence that the proposed school's traffic would be minimal and within the town's accepted level of service. (R.R. Item 5c, p. 8; Item 14 pp. 31, 87-90, 135). Therefore, the parking condition was not an "integral" part of the PZB's decision to grant defendant JEI's special permit. The PZB's decision to grant the special permit was reached only after it had assured itself that traffic hazard and congestion issues would be removed or minimized in accordance with the traffic related conditions imposed on the special permit. Clearly, the PZB would have granted the special permit regardless of the eventual outcome of the parking condition since it was not the dispositive consideration before the board. Therefore, Condition 9 requiring daily parking on the subject premises is severable from the granting of the special permit because its removal would in no way destroy the value or effectiveness of the special permit.
Conclusion
Based on the aforementioned reasons, the plaintiffs' appeal is dismissed.
KATZ, J. CT Page 586