[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, Shepard Group, LLC, appeals from the decision of the defendant, the planning and zoning commission of the town of Hamden approving a petition for a change of zoning classification from an R-3 zone to an R-1 zone.
The plaintiff, Shepard Group, LLC, is the owner of property known as 336-410 Denslow Hill Road, Hamden, Connecticut, consisting of approximately 11.5 acres. (Amended Appeal, ¶ 1; ROR, Item 18, p. 5.) On December 12, 1999, the defendant, the planning and zoning commission of the town of Hamden, filed an application to rezone the plaintiff's property from residential R-3 (one-half acre) to residential R-1 (two acre). The property had been zoned residential R-1 until 1982 when it was rezoned residential R-3. (Amended Appeal; ¶ 6a; ROR, Item 18, p. 3.) The commission accepted testimony concerning the application at a public hearing conducted on January 11, 2000 and continued to February 8, 2000. (ROR, Item 26, p. 3; Transcript, Public Hearing, p. 53.) At the conclusion of the hearing, the commission voted seven to two in favor of a zone change for "Area 2" (Parcels A B), stating that the change would be more in "harmony with Section 8.3 of the Subdivision Regulations of the Town Plan of Conservation and Development, because of the difficulty CT Page 67 of development of the property since the majority of the land consists of slopes of over twenty-five percent."[1] (ROR, Item 26, p. 9.) The commission voted unanimously to maintain "Area 1" (Parcel C) as an R-3 zone because it "has a lesser degree of incline vs. Area 2, and the ingress and egress to that property is to Howard Drive and Denslow Hill Extension" and is therefore developable. (ROR, Item 26, p. 9.)
General Statutes § 8-8 governs an appeal from the decision of a planning and zoning commission to the superior court. "A statutory right of appeal may be taken advantage of only by strict compliance with the statutory provisions by which it is created." Bridgeport Bowl-O-Rama v.Zoning Board of Appeals, 195 Conn. 276, 283, 487 A.2d 559 (1985).
"[P]leading and proof of aggrievement are prerequisites to the trial court's jurisdiction over the subject matter of a plaintiff's appeal."Jollv. Zoning Board of Appeals, 237 Conn. 184, 192, 676 A.2d 831
(1996). In the present appeal, the plaintiff alleges that it is aggrieved because it owns the property that has been rezoned by the defendant. (May 25, 2000, Amended Appeal, ¶ 1, 10.)
The plaintiff has attached a deed evincing ownership of the property in question. The plaintiff is aggrieved. See Quarry Knoll II Corp. v.Planning and Zoning Commission, 256 Conn. 674, 704, 780 A.2d 1 (2001) ("[T]here was sufficient evidence before the trial court as to Ridge's status as owner of the property for the court to conclude that the plaintiffs were aggrieved.")
General Statutes § 8-8 (b) provides, in part, that an "appeal shall be commenced by service of process in accordance with subsections (e) and (f) [now subsections (f) and (g)] of this section within fifteen days from the date that notice of the decision was published as required by the general statutes." Subsection (e) further provides that service "shall be made by leaving a true and attested copy of the process with, or at the usual place of abode of, the chairman or clerk of the board, and by leaving a true and attested copy with the clerk of the municipality."
The record contains a letter, indicating that notice of the commission's decision was to be published on February 15, 2000 in the New Haven Register. (ROR, Item 27.) On February 25, 2000, this appeal was commenced by service of process on the chairman of the planning and zoning commission and the clerk of the town of Hamden. (ROR, Item 32.) This appeal was commenced in a timely manner by service of process upon the proper parties.
"When a local zoning authority enacts a zone change, it is acting in a CT Page 68 legislative capacity." Sowin Associates v. Planning Zoning Commission,23 Conn. App. 370, 375, 580 A.2d 91 (1990), cert. denied, 216 Conn. 832,583 A.2d 131 (1991). "We have said on many occasions that courts cannot substitute their judgment for the wide and liberal discretion vested in local zoning authorities when they have acted within their prescribed legislative powers. . . . The courts allow zoning authorities this discretion in determining the public need and the means of meeting it, because the local authority lives close to the circumstances and conditions which create the problem and shape the solution. . . . Courts, therefore, must not disturb the decision of a zoning commission unless the party aggrieved by that decision establishes that the commission acted arbitrarily or illegally. . . .
"The test of the action of the commission is two-fold: (1) The zone change must be in accord with a comprehensive plan, General Statutes § 8-2 . . . and (2) it must be reasonably related to the normal police power purposes enumerated in § 8-2. . . .
"A comprehensive plan has been defined as a general plan to control and direct the use and development of property in a municipality or a large part thereof by dividing it into districts according to the present and potential use of the properties. . . . The requirement of a comprehensive plan is generally satisfied when the zoning authority acts with the intention of promoting the best interests of the entire community. . . ." (Citations omitted; internal quotation marks omitted.) First HartfordRealty Corp. v. Plan and Zoning Commission, 165 Conn. 533, 540-41,338 A.2d 490 (1973). "[T]he commission, acting in a legislative capacity, [has] broad authority to adopt the amendments." (Brackets in original.) Protect Hamden/North Haven from Excessive Traffic Pollution, Inc. v. Planning Zoning Commission, 220 Conn. 527, 542,600 A.2d 757 (1991). "Upon appeal, the trial court reviews the record before the board to determine whether it has acted fairly or with proper motives or upon valid reasons. . . . The burden of proof to demonstrate that the board acted improperly is upon the plaintiffs." Bloom v. ZoningBoard of Appeals, 233 Conn. 198, 206, 658 A.2d 559 (1995). "Where a zoning [commission] has stated its reason for its actions, the court should determine only whether the assigned grounds are reasonably supported by the record and whether they are pertinent to the considerations which the authority was required to apply under the zoning regulations. . . . The zone change must be sustained if even one of the stated reasons is sufficient to support it. . . . The principle that a court should confine its review to the reasons given by a zoning [commission] does not apply to any utterances, however incomplete, by the members of the [commission] subsequent to their vote. [Rather, it] applies where the [commission] has rendered a formal, official, collective statement of reasons for its action." (Brackets in original; internal CT Page 69 quotation marks omitted.) West Hartford Interfaith Coalition v. TownCouncil, 228 Conn. 498, 513, 636 A.2d 1342 (1994).
With respect to the plaintiff's property, the commission amended the zoning map from an R-3 zone to an R-1 zone. The commission approved the zone change "for reasons that it would be more in harmony with Section 8-3
of the Subdivision Regulations, the Town Plan of Conservation and Development, because of the difficulty of development of the property since the majority of the land consists of slopes of over 25%." (ROR, Item 26, p. 9.)
The plaintiff's amended appeal alleges that (1) the commission did not comply with General Statutes § 8-2 regarding the changing of zoning classifications and it did not comply with § 100 of the Hamden zoning regulations; (2) the commission's decision constituted spot zoning; and (3) the designated zone changes resulted in an illegal taking of the plaintiff's property.
A. Whether the Commission's Decision Complied with General Statutes§ 8-2 and § 100 of the Hamden Zoning Regulations.
The plaintiff argues that in order to comply with General Statutes § 8-2, the zoning regulations, including the zoning map, must conform to the comprehensive town plan,[2] but that there is no record evidence of such compliance. In support of this, the plaintiff argues that Hamden's comprehensive town plan, which is reflected in a publication titled Hamden Plan for Our Future; (ROR: Hamden Plan); categorizes the subject property as suitable for residential one-half acre or more lots, or residential R-3 zoning, but less than one acre lots. (ROR: Hamden Plan, p. 18.) According to the plaintiff, the area surrounding the property in question is zoned residential R-3, i.e., zoned for residential dwellings on approximately one-half acre lots. The plaintiff argues that there are no zones within close proximity of the subject property that are residential R-1 zones. Therefore, according to the plaintiff, in order for the area to conform to the comprehensive town plan, the subject property must be zoned residential R-3. In addition, the plaintiff contends that the highest and best use of the property in question is for it to be zoned R-3.
The plaintiff also argues that to be in compliance with § 100 of the Hamden zoning regulations, the commission must "promote the health, safety and general welfare of the community."[3] (Plaintiff's Brief, pp. 9-10, quoting § 100.) According to the plaintiff, the "health, safety and welfare of the community" did not require that the commission amend the zoning classification for the parcel in question. Rather, the plaintiff claims that evidence indicated that, in a period of five years, CT Page 70 there were only four motor vehicle accidents in the area, none of which were serious, the area does not lie in a flood zone, and the adjacent property was subdivided into one-half acre residential lots. Therefore, the plaintiff concludes that the commission did not meet the general standards for zoning regulation as set forth in § 100 of the Hamden Town regulations.
The defendant counters that, based on sufficient record evidence, it acted well within its "wide and liberal legislative discretion" when it approved the amendment to the zoning map. (Defendant's Brief, p. 3.) The defendant argues that the zone change is in accord with § 401 of the Hamden zoning regulations, which provides that "`R-1 District provisions encourage development of low density residential uses generally in areas with difficult topographic or soil conditions and without public water and sewer facilities in a manner that will preserve the rural open space character as well as the physical and environmental amenities of these areas.'"[4] (Defendant's Brief, p. 3, quoting § 401.) It argues that the topography of the property in question, with slopes ranging from twenty to forty percent, does not lend itself to the intensive residential development that characterizes R-3 zoning. The defendant further argues that the subject property lies adjacent to the Farm Brook Flood Control Project property, which is a flood plain and which will never be developed for residential purposes, as well as adjacent to several R-3 zoned properties, which are unlikely to be developed for residential purposes.[5] Therefore, according to the defendant, the amendment to the zoning map will help to preserve the "`rural, open space character as well as the physical and environmental amenities'" of the area, in accordance with § 401 of the zoning regulations. (Defendant's Brief, p. 4, quoting § 401.)
The record reflects that the commission conducted a public hearing on January 11, 2000, which was continued to February 8, 2000. (ROR, Item 26, p. 3; Tr., Public Hearing, p. 53.) It entertained statements both in opposition to and in support of the amendment. For example, the plaintiff's representative spoke in opposition to the zone change, stating that there is no reason to alter the existing zoning, the change would be inconsistent with surrounding parcels, the change would result in a reduction in property values, and the property has water, sewage and drainage capacity to enable it to remain at the existing zone classification. (ROR, Item 18, pp. 5-7; Tr., Public Hearing, pp. 17-25.) In addition, the plaintiff's representative suggested that since the Hamden Plan indicates that the R-1 classification is meant for property without water and sewer capacity and the subject property has water and sewer capacity, it should not be zoned R-1. (Tr., Public Hearing, p. 25.) CT Page 71
Residents of the area spoke in support of the change because of the area's proximity to the Flood Control Project, to preserve the rural character of the neighborhood, and because of the area's historical significance. (ROR, Item 18, p. 4; Tr., Public Hearing, p. 13.) One resident expressed the concern that an increase in population to the area would burden local fire and ambulance resources. (ROR, Item 18, p. 4; Tr., Public Hearing, p. 16.)
The record reveals that after hearing extensive discussion concerning the need for the zone change, the commission arrived at its conclusion in compliance with the Hamden zoning regulations and the comprehensive town plan. (ROR, Item 18, p. 9; Tr., Public Hearing, p. 67.) For example, the town planner explained that the overall goals and objectives of the town plan of development require that the commission take into consideration the subject property's unique topographical features. (ROR, Item 18, p. 9.) To this effect, the town planner offered testimony with regard to the steep slopes in the area, some of which are three times the incline allowed by town driveway regulations. (Tr., Public Hearing, p. 55-56.) One of the commissioners suggested that altering the inclines would be damaging to the environment. (Tr., Public Hearing, p. 6.) In response to the plaintiff's concerns that the new classification does not strictly follow the Town Plan zoning classifications, the town planner testified that the new classification fulfills the "overall" goals, policies and objectives of the town plan of development in that the new classification will bring the subject parcels into harmony with the surrounding areas. (Tr., Public Hearing, pp. 42-43; ROR, Item 18, p. 9.) Looked at in its entirety, the zoning map reveals that the area in question lies adjacent to an extensive, undeveloped Farm Flood Control Project property, as well as adjacent to several large parcels of land, which, although zoned R-3, are unlikely to be developed for residential use. (ROR Item 31 (map); Tr., Public Hearing, pp. 22, 64.) In response to the plaintiff's concerns that R-1 zones are not meant to include parcels with existing sewer and water capacity, the commission heard testimony from the town planner to the effect that Hamden zoning policies indicate that whether an area has sewers should not be a "driving force" when considering zoning based on density in an area. (Tr., Public Hearing, p. 43-44.)
The plaintiff also argues that the commission did not act in compliance with § 100 of the Hamden zoning regulations because its actions did not promote the "health, safety and welfare of the community." (Plaintiff's Brief, pp. 9-10.) The zoning regulations indicate, however, that in addition to requiring that the commission promote "health, safety and welfare" of the community, the commission must act to "prevent the overcrowding of land and [avoid] undue concentration of population." (Hamden zoning regulations, § 100.) The record reveals that the commission was attempting to create and maintain open space and regulate CT Page 72 with attention to the unique topography of the region because it was motivated by a concern for the high "densities" in the area. (ROR, Item 18, p. 9; Tr., Public Hearing, pp. 44-45.) Therefore, the record reveals that in acting to prevent overcrowding, the commission was motivated with the "health, safety, and welfare" of the community in mind. (Hamden zoning regulations, § 100.)
The commission's actions "are reasonably supported by the record and pertinent to the conditions which the authority was required to apply under the zoning regulations"; West Hartford Interfaith Coalition v. TownCouncil, supra, 228 Conn. 513; because the record supports the commission's stated reason for the zone change, to wit that it is in "harmony with Section 8.3 of the Subdivision Regulations of the Town Plan of Conservation and Development, because of the difficulty of development of the property since the majority of the land consists of slopes of over twenty-five percent." (ROR, Item 26, p. 9.) Evidence on the record indicates that the zoning authority acted "with the intention of promoting the best interests of the entire community." First HartfordRealty Corp. v. Plan and Zoning Commission, supra, 165 Conn. 541.
The plaintiff has not met its burden of showing that the defendant acted "improperly" when amending the zoning map. Bloom v. Zoning Board ofAppeals, supra, 233 Conn. 206.
Therefore, the plaintiff's appeal should not be sustained upon this ground.
B. Whether the Commission's Decision Constituted Spot Zoning.
"[S]pot zoning is the reclassification of a small area of land in such a manner as to disturb the tenor of the surrounding neighborhood. . . . Two elements must be satisfied before spot zoning can be said to exist. First, the zone change must concern a small area of land. Second, the change must be out of harmony with the comprehensive plan for zoning adopted to serve the needs of the community as a whole." (Citation omitted; internal quotation marks omitted.) Blaker v. Planning ZoningCommission, 212 Conn. 471, 483, 562 A.2d 1093 (1989). The defendant does not dispute that the land in question is a "small area of land."[6]
The plaintiff argues that the new zoning constitutes spot zoning because the R-1 zoned parcel is surrounded by R-3 zoned parcels. Therefore, according to the plaintiff, the zone change has resulted in the creation of property that is not consistent with the surrounding zones, which violates the two-prong test for spot zoning. The plaintiff also argues that the zone change violates the "uniformity rule," which provides that the zone change "shall be uniform for each class or kind of CT Page 73 buildings, structure or use of land throughout each [zoning] district." In addition, the plaintiff claims that the town planner acted arbitrarily when he recommended that the property be rezoned because his decision constituted a rezoning that was neither a consistent nor uniform decision with his previous decision.
The defendant counters that its decision did not amount to spot zoning. It argues that a zone change that is in harmony with the comprehensive town plan does not constitute spot zoning and its decision to amend the zoning map is consistent with the goals of the comprehensive town plan. The defendant also argues that it heard evidence that the property had been zoned R-1 until 1982 and that the new regulations allow a consistent residential use of the property while restoring the property to its historic use.
The record reflects that the commission heard statements from those in support and those in opposition to the amendment to the map, after which it carefully assessed the suitability of a zone change to this particular parcel. For example, the record reveals that the residents of the area neighborhood association group voiced strong support for the change because of the subject property's proximity to the Farm Brook Control Project, their concerns with environmental issues and the need to preserve open spaces in Hamden, and because of the historical significance of the land. (ROR, Item 18, p. 4; Tr., Public Hearing, pp. 13-14.) Opponents contended that amending the map to an R-1 zone would render the subject area inconsistent with the surrounding parcels, which are zoned R-3. (Tr., Public Hearing, p. 34.) Additionally, opponents claimed that a change would be out of harmony with the town plan because the Town Plan states that the subject areas should be zoned for one-half acre parcels. (Tr., Public Hearing, pp. 34-35.)
Evidence was presented which indicated that the area in question was zoned R-1 until 1982, and that at that time, the area was rezoned R-3 without active consideration on the part of the zoning committee. (Tr., Public Hearing, p. 63.) The record thus shows that the rezoning, in effect, returns the area to its original classification. The record also indicates that the commission decided to return the area to its original zoning because of the difficulty of development in the area given its topography. (ROR, Item 26, p. 9.) Furthermore, the evidence in the record indicates that when looked at in its entirety, the rezoned parcel is in harmony with the surrounding area because it links undeveloped parcels, creating a large, open space area that runs from north/west to south/east. (ROR, Item 31 (map).)
The basis of the plaintiff's argument that the zone change constitutes spot zoning is that the new zone will be different from surrounding zones CT Page 74 and that the commission acted arbitrarily when it amended the zoning map. The plaintiff cites Damick v. Planning Zoning Commission,158 Conn. 78, 84, 256 A.2d 428 (1969), where the court emphasized that "[b]efore a zoning board rezones property, there should be proof either that there was some mistake in the original zoning or that the character of the neighborhood has changed to such an extent that a reclassification ought properly to be made." (Internal quotation marks omitted.) InDamick, where the defendant commission rezoned an area from residential to industrial, creating an eighteen and one-half acre industrial tract in the middle of a large residential zone, the court determined that the change of zone was substantially at odds with the comprehensive plan of zoning. Id., 85. Damick is to be distinguished from the present case, where the subject parcel is similar to surrounding parcels and the zone change is clearly in accordance with the comprehensive town plan.
"There is . . . no requirement that a zone change must be an expansion or continuation of the zone of the surrounding property." Telker v.Planning Zoning Board, Superior Court, judicial district of Ansonia-Milford at Milford, Docket No. 032227 (January 4, 1991, Fuller,J.) "[S]o long as the change is in accordance with the comprehensive plan and the central purpose for the change is benefitting the community as a whole as opposed to the owner of the property, the board cannot be said to have acted unreasonably or arbitrarily and the claim of spot zoning falls." Morningside Association v. Planning Zoning Board, 162 Conn. 154,162, 292 A.2d 893 (1972). "We . . . afford the commission's determination of whether a change comports with the town's comprehensive zoning plan substantial deference." Michel v. Planning Zoning Commission,28 Conn. App. 314, 320, 612 A.2d 778, cert. denied, 223 Conn. 923,614 A.2d 824 (1992). Based on the record, it is clear that the commission acted in accordance with the comprehensive town plan and with the "central purpose" of benefitting the entire community as a whole.Morningside Association v. Planning Zoning Board, supra, 162 Conn. 162.
Additionally, "[w]here a local Zoning authority is acting in a legislative capacity in enacting a zone change, it is not bound by the general rule which would prohibit it from reversing an earlier decision without evidence of a change in conditions. . . . The change of conditions rule will only be applied in those rare instances where the zoning amendment is patently arbitrary." (Citations omitted; internal quotation marks omitted.) Wisniewski v. Zoning Board, 6 Conn. App. 666,667, 506 A.2d 1092 (1986). In the present case based on the record, the commission made a reasoned choice when it decided to reverse its earlier decision and that it cannot be said to have acted arbitrarily when it rezoned the area in question. Therefore, contrary to what the plaintiff argues, it was not required to make its decision solely after finding a change of conditions in the area. CT Page 75
Accordingly, the commission properly exercised its discretion when it amended the zoning map. It did not zone the property in a manner that constitutes spot zoning. In addition, it did not arbitrarily reverse a prior decision in a manner that would constitute impermissible rezoning. The plaintiff's appeal should not be sustained upon this ground.
C. Whether the Commission's Decision Constituted an Illegal Taking.
The plaintiff argues that the designated zone change constitutes an illegal taking of the plaintiff's property without providing the plaintiff with just compensation for the property.
The defendant counters that the plaintiff is not left without any reasonable use for the property in question because the property can be developed as residential two acre lots. The defendant also contends that the plaintiff's property was zoned R-1 at the time the present owner purchased the property, so that the plaintiff cannot argue that the zone change interfered with its investment based expectations. (Defendant's Brief, p. 8.)[7]
In Connecticut, the determination of whether a taking has occurred involves a balancing test. Chevron Oil Co. v. Zoning Board of Appeals,170 Conn. 146, 151, 365 A.2d 387 (1976). "Short of regulation which finally restricts the use of property for any reasonable purpose resulting in a `practical confiscation,' the determination of whether a taking has occurred must be made on the facts of each case with consideration being given not only to the degree of diminution in the value of the land but also to the nature and degree of public harm to be prevented and to the alternatives available to the landowner." Id; see also Cohen v. Hartford, 244 Conn. 206, 221, 710 A.2d 746 (1998) (same). "Disadvantage in property value or income, or both, to a single owner of property, resulting from application of zoning restrictions, does not, ordinarily, warrant relaxation in his favor on the ground of . . . unnecessary hardship. . . . Financial considerations are relevant only in those exceptional situations where a board could reasonably find that the application of the regulations to the property greatly decreases or practically destroys its value for any of the uses to which it could reasonably be put and where the regulations, as applied, bear so little relationship to the purposes of zoning that, as to particular premises, the regulations have a confiscatory or arbitrary effect. . . . Zoning regulations have such an effect in the extreme situation where the application of the regulations renders the property in question practically worthless." Hoffer v. Zoning Board of Appeals of Oxford,64 Conn. App. 39, 44, 779 A.2d 214 (2001). "Our analysis under the test of Chevron begins with the financial impact on the plaintiffs." D'AddarioCT Page 76v. Planning Zoning Commission, 25 Conn. App. 137, 144, 593 A.2d 511
(1991).
In the present appeal, the record is devoid of evidence which would allow the court to determine "the degree of diminution of value to the land." Chevron Oil Co. v. Zoning Board of Appeals, supra, 170 Conn. 151. The record merely reflects that at the January 11, 2000 public hearing, the plaintiff submitted a letter from a Mr. Podesta, which stated that not many people would purchase a two acre lot in an area surrounded by residential half-acre lots. (Tr., Public Hearing, p. 24.)
Numerous cases demonstrate that property owners who are appealing a commission's decision have at hand an appraiser who can testify to the property's value. See, e.g., A. Aiudi Sons, LLC v. Plainville Planning Zoning Commmission, Superior Court, Judicial District of New Britain, Docket No. 499805 (July 6, 2001, Cohn, J.) ("The hearing was adjourned to October 26, 1999, at which time, evidence both favorable and unfavorable to the zone change was presented. . . . The opponents . . . produced an appraiser to testify that property values would be affected by the zone change.") In Bartlett v. Zoning Commission, 161 Conn. 24, 282 A.2d 907
(1971), the court was able to determine that the property owner was left with no reasonable use for land that was subject to amended zoning regulations because the property owner submitted sufficient evidence concerning the resultant significant devaluation of the full market value of the owner's property.
Thus, on the basis of appraisers' testimony, courts are able to determine whether a plaintiff suffered such a serious loss of property value so as to amount to an illegal taking. In the present case, the court cannot determine whether a taking has occurred because the plaintiff has not submitted evidence to bolster its claim that its property has been significantly devalued as a result of the zone change. Accordingly the plaintiff has not met its burden of demonstrating that the commission's decision to amend the zoning map amounted to an illegal taking.
There is clear evidence on the record to conclude that the commission acted within its discretion when it amended the zoning map from an R-3 zone to R-1 zone. Therefore, the plaintiff's appeal should be dismissed.
Robert P. Burns Judge Trial Referee